## Samuel Reid
### v.
### George Furness. et al.

Verdict against evidence.—The verdict in this case is manifestly against the weight of evidence. The testimony shows that appellees gave authority to one Brown to sell the goods in question, and he having sold them, they can not repudiate that authority and hold appellant liable therefor.

Appeal from the Superior Court of Cook county; the Hon. Elliott Anthony, Judge, presiding.    Opinion filed November 29, 1882.

Mr. Sidney C. Eastman, for appellant; that where the verdict is clearly against the weight of evidence, the judgment will be reversed, cited Blake v. McMullen, 91 Ill. 34; Ill. Cent. R. R. Co. v. Chambers, 71 Ill. 519; McGregor v. Devitt, 64 Ill. 261; Fox River Mfg. Co. v. Reeves, 68 Ill. 403.

Mr. John M. Southworth, for appellees; as to the liability of a broker or commission man upon accepting an article for sale on commission, cited Dupairat v. Wolfe, 29 N. Y. 436; Millikin v. Dehon, 27 N. Y. 364; Scott v. Rogers, 31 N. Y. 676.

It is for the jury to determine the weight of testimony and the credibility to be given to witnesses: C. B. & Q. R. R. Co. v. Dickson, 63 Ill. 157; Gill v. Crosby, 63 Ill. 190; Paton v. Stewart, 70 Ill. 481; Poleman v. Johnson, 84 Ill. 269.

Bailey, P. J.  This was a suit commenced by George Furness and William Furness, against Samuel Reid, before a justice of the peace, where a judgment was rendered in favor

of the defendant. On appeal to the Superior Court of Cook county a trial was had before the court and a jury, resulting in a verdict and judgment in favor of the plaintiffs for $140 and costs. From this judgment the defendant has appealed to this court.

The suit was brought to recover of the defendant the value of a certain pump, delivered by the plaintiffs to him to be sold by him for them, and which the defendant failed, as is alleged, to account for to the plaintiffs. We have examined the record with care, and are of the opinion that the verdict of the jury is so clearly against the weight of the evidence, that it should have been set aside.

It appears that, at the date of the transactions in question, the plaintiffs were engaged in manufacturing steam pumps, and that the defendant, at the same time, was dealing in machinery on commission. Some negotiations took place between the parties, which resulted in the plaintiffs sending to the defendant's place of business three pumps, to be sold respectively for $75, $140, and $150, the plaintiffs reserving the right to make sale of said pumps themselves if they should have an opportunity. The plaintiffs subsequently sold the $75 and $140 pumps, and they were taken away. One Thomas T. Brown, who was also dealing in machinery on commission, occupied a portion of the defendant's office at the time, and some time after the pumps were left with the defendant, Brown sold and delivered the remaining pump to certain parties in Milwaukee, and failed to account to the plaintiffs for the proceeds.

The principal controversy in the case turns upon the question whether the plaintiffs employed or authorized Brown to sell said pump. The only witness produced on behalf of the plaintiffs was George Furness, one of themselves. He testified, when examined in chief, that he never authorized Brown or any one else, except the defendant, to sell the pump; that some few weeks after the pumps were placed in the defendant's possession, he had a call for the pump in question, and went to the defendant's place for it and found it gone; that he afterward met the defendant on the street, and asked him where

the pump was, and was told that Brown had sold it, and witness then told defendant that he should hold him responsible for it; that Brown soon after went east, and after his return witness called on him to ascertain from him what had become of the pump, but did not demand payment therefor from him.

On behalf of the defendant, Brown was called as a witness and testified, that some few days after the pumps were sent to the defendant's place, Furness came in and had a talk with witness, in which witness told Furness that he thought he could sell a couple of the pumps, and that Furness gave him his figures on two of them (the $140 and the $150 pumps), and told him he could have all he could make on the two pumps over $250, and that witness then made a memorandum of those figures in his book; that witness sold one of the pumps, and shortly afterward went east and was gone six weeks, and after his return, Furness called on him and asked him if he (witness), was going to pay him; that he had had previous dealings with Furness in which he had sold him a lathe at a reduction of $25, and that for that reason Furness gave him a lower figure on the pumps; that witness did not sell the pump by authority of defendant, but by authority of the plaintiffs.

James H. McKay, another witness for defendant, testified, that at the time of the transactions in question, he was in the defendant's employ; that a few days after the pumps were brought to the defendant's place, Furness came in and had a talk with Brown, of which witness heard a part; that it was about the pumps which were then present lying on the floor; that he saw Furness pointing to the pumps and saw Brown jot down something in his memorandum book, and as Furness was going out, witness heard him say to Brown, "I hope, Tom, you will be able to sell those pumps."

The defendant, on his own behalf, testified that a few days after Furness gave him the figures on the pumps, he came in and had a talk with Brown at Brown's desk in the office; that defendant did not hear the conversation, it being carried on in a low tone; that the pumps were near where they were

sitting and in full view, and that during the conversation Furness pointed to them once or twice, and that Brown made some memoranda in his book; that Brown sold the pump and left for the east shortly afterward, and during his absence Furness met witness and asked where the pump was, and was told that Brown had sold it to some parties in Milwaukee, to which Furness replied, "He never told me anything about it," but said nothing about the witness being responsible for it; that a few days afterward witness called on Furness and asked him if Brown had sent him any money, saying that he had sent him (witness) a check for $50, and that witness had understood that he was going to send Furness some; that Furness answered, "No," and after a few moments' silence added, "I guess I will hold you responsible for the pump;" that witness replied, "How do you propose to hold me responsible when you come into my place and right in my presence arranged with Brown about selling the pump left with me, and then because Brown sold the pump, and you think he has run away and turned rascal, you propose to hold me for it;" that Furness then said, "Brown said he had a chance to sell the pumps and I gave him the figures on two of them at $5 less on each pump than I gave you, but I told him the offer would not stand open forever."

Furness, being called as a witness in rebuttal, testified, "In consideration of a reduction of $25 in the price of the lathe, I had agreed to sell Mr. Brown the two No. 4 pumps for $125 each; but when I went to his office I told him I was ready to fulfill my part of the agreement, but he must accept then, as the agreement would not last forever."

It will thus be seen that the defendant and two other witnesses, who so far as appears, are disinterested, concur in proving an arrangement between Furness and Brown, by which the latter was employed and authorized by Furness to sell the pump. They are disputed by Furness alone who is a party to the suit. It seems very extraordinary that a jury should feel justified in believing one party who is wholly uncorroborated, as against the testimony of the other party who is corroborated by two disinterested witnesses. But Furness, al-

though he denied having made any arrangement with Brown in relation to the pump when examined in chief, yet, when again on the stand, he admits an agreement with Brown by which the latter was to have the two pumps at a price $5 lower than he had offered them to the defendant, and that at the time he visited Brown at the defendant's place of business, that arrangement was in force, and that he then insisted upon an immediate acceptance by Brown, remarking that the agreement would not last forever, but he does not say whether or not Brown accepted, nor does he pretend that he then terminated the agreement.

When we take into consideration this further testimony of Furness, there seems to be no substantial disagreement between him and the defendant's witnesses. All concur in showing that Brown was authorized by Furness to dispose of the pump. Furness then having at the time he delivered the pumps to the defendant, reserved the right to sell them himself, and having authorized Brown to make sale for him, there is no principle of law or justice that will hold the defendant answerable to the plaintiffs for their value, now that Brown has sold the pump in question and failed to account for the proceeds. It is clear, under the evidence, that the plaintiffs have no right to recover, and the judgment will therefore be reversed.

Judgment reversed.